UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY WARREN TAYLOR,

    Plaintiff,                                        Hon. Janet T. Neff

v.                                                       Case No. 1:08 CV 952

SCOTT L. HOLMS, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendant Holmes' Motion for Summary Judgment</u>, (dkt. #17); <u>Defendant Corning's Motion for Summary Judgment</u>, (dkt. #18); and <u>Defendant Ward's Motion for Summary Judgment</u>, (dkt. #20). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant Holmes' motion and Defendant Corning's motion both be **granted in part and denied in part**, and that Defendant Ward's motion be **granted**.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint. (Dkt. #1). Plaintiff asserts that "[f]or a better part of a year or so I have been sending kites to health-care regarding numbness in the left side of my face that goes down into my lips." Plaintiff also experienced "extreme headaches. . .real sharp chest pains" and numbness throughout "the whole left side of [his] body." Plaintiff's requests for treatment were denied by "health-care," which accused Plaintiff of "makeing (sic) things up" and referred him to the prison psychiatrist for treatment. Defendant Holmes subsequently

prescribed Plaintiff seizure medication which "is doing nothing for the problem." Plaintiff's condition continued to worsen, a circumstance which he brought to "the doctor's attention again" on September 17, 2008. The doctor, presumably Defendant Holmes, "yet again" did "nothing." Plaintiff then began to suffer "real bad anxiety attacks," weakness, and difficulty sleeping.

Plaintiff initiated this action on October 8, 2008, against Dr. Scott Holmes and two members of the Bellamy Creek Correctional Facility nursing staff, Sharon Ward and Kevin Corning. Plaintiff has also sued "all the rest of the" Bellamy Creek nursing staff. The Court has interpreted Plaintiff's complaint as asserting that Defendants have violated his Eighth Amendment right to be free from cruel and unusual punishment. While Plaintiff has effected service on Defendants Holmes, Ward, and Corning, he has failed to effect service on any of the other defendants against whom this action is asserted. Plaintiff seeks monetary and injunctive relief. Defendants Holmes, Ward, and Corning now move for summary judgment.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to

show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the nonmoving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

**I.       Defendants Corning and Holmes**  (Dkt. #17 and 18)

Defendants Corning and Holmes move for summary judgment on the grounds that Plaintiff has failed to exhaust his administrative remedies.

      A.       Exhaustion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is

made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

Michigan Department of Corrections Policy Directive 03.02.130 (effective July 9, 2007) articulates the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P-Q. The policy provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ W.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by policy, e.g., the regional health administrator for a medical care grievance. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the

date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. The total grievance process from the filing of the Step I grievance to providing a response at Step III "shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." *Id.* at ¶ S.

Defendants have identified two grievances that Plaintiff filed: (1) Grievance IBC-08-03-748-24C and (2) Grievance IBC-08-03-768-12D (filed on March 24, 2008). Plaintiff also included with his complaint copies of a third grievance he filed concerning this matter: Grievance IBC-08-06-1426-12D (filed on June 21, 2008). An examination of these grievances reveals that Plaintiff has properly exhausted only a portion of the claims asserted in his complaint.

    1.    Grievance IBC-08-03-748-24C

This grievance concerns Plaintiff's request to be transferred, a matter not presently at issue. Thus, this particular grievance does not serve to exhaust any of the claims asserted in Plaintiff's complaint.

    2.    Grievances IBC-08-03-768-12D and IBC-08-06-1426-12D

Plaintiff filed these grievances on March 24, 2008, and June 21, 2008, respectively. Defendants do not contest that Plaintiff pursued the earlier grievance through all three steps of the grievance process. While it is not clear from Plaintiff's submission whether he pursued the latter grievance through all three steps of the grievance process, Defendants have presented no evidence that Plaintiff failed to pursue this grievance through all three steps.

In these two grievances, Plaintiff asserts that "health care" refused to provide him medical treatment despite his numerous requests for such. Plaintiff did not identify by name any individual in either of these grievances, but instead simply referred to "health care." Defendants Holmes and Corning argue that because Plaintiff failed to identify them by name in these grievances, Plaintiff has failed to properly exhaust the claims asserted therein. The Court disagrees.

Defendants are correct that Plaintiff failed to identify any individual by name in these grievances. However, prison officials did not reject either of these grievances for this apparent failure. As noted above, the failure by a prisoner to comply with the MDOC's procedural rules concerning the filing of grievances supports a motion for summary judgment for failure to properly exhaust administrative remedies only if prison officials actually rejected the grievance for failure to comply with the relevant procedural rule.

The Court notes that this is not a circumstance in which a prisoner specifically identified certain individuals by name in a grievance and then later attempted to sue different individuals that were not identified in the grievance. In such a circumstance, dismissal for failure to exhaust (for failure to name the defendants in a grievance) may be appropriate because prison officials would not necessarily have had reason to know that the prisoner had failed to comply with the "identification" requirement. In other words, in such a circumstance prison officials would not necessarily be on notice that the prisoner failed to comply with the relevant procedural rule. The present circumstance, however, is easily distinguishable. Here, Plaintiff failed to identify *any* individual by name in his grievances, instead asserting his grievances against "health care." This certainly put prison officials on notice that Plaintiff failed to comply with the relevant procedural rule. Prison officials certainly could have rejected Plaintiff's grievance for failing to identify by name the "staff" members in question. Prison officials,

however, declined to enforce this procedural rule against Plaintiff. Defendants cannot now seek to enforce the procedural rule in question.

The Court concludes, therefore, that these grievances properly exhaust Plaintiff's claims that Defendants Holmes and Corning refused his requests for medical treatment through June 21, 2008. To the extent, however, that Plaintiff's complaint is interpreted as asserting claims against Defendants Holmes and Corning for conduct occurring after June 21, 2008, the Court finds that any such claims have not been properly exhausted. Accordingly, the undersigned recommends that Defendant Holmes' and Defendant Corning's motions each be granted in part and denied in part.

**II.        Defendant Ward**

   A.     Exhaustion

Defendant Ward asserts that because Plaintiff failed to identify her by name in any grievance concerning this matter, Plaintiff has failed to properly exhaust his claims against her. For the same reasons articulated immediately above, the Court finds that Plaintiff has properly exhausted his claim that Defendant Ward refused his requests for medical treatment through June 21, 2008. Again, to the extent that Plaintiff's complaint is interpreted as asserting claims against Defendant Ward for conduct occurring after June 21, 2008, the Court finds that any such claim has not been properly exhausted. Accordingly, the undersigned recommends that Defendant Ward's motion to dismiss for failure to exhaust be granted in part and denied in part.

B.   Qualified Immunity

Defendant Ward asserts that she is entitled to summary judgment on the basis of qualified immunity. Qualified immunity protects government officials from claims seeking monetary damages against them in their personal capacity. Before addressing Defendant's claim of qualified immunity, therefore, the Court must first determine whether Plaintiff has even sued Defendant Ward in her personal capacity.

In *Wells v. Brown*, 891 F.2d 591 (6th Cir. 1989), the Sixth Circuit stated that plaintiffs "seeking damages under § 1983 [are required to] set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials." *Id.* at 592. In response to courts interpreting this language as imposing a "a per se rule requiring § 1983 plaintiffs to affirmatively plead 'individual capacity' in the complaint," the Sixth Circuit revisited this in issue in *Moore v. City of Harriman*, 272 F.3d 769 (6th Cir. 2001) (*en banc*).

Rejecting "such a strict interpretation," the *Moore* court observed that "[u]nder *Wells v. Brown*, absent *any* indication that these defendants are being sued individually, we must assume that they are being sued in their official capacities." *Moore*, 272 F.3d at 772. Accordingly, "[a]ll a [§ 1983] complaint need do is afford the defendant 'fair notice of what the claim is and the grounds upon which it rests.'" The court concluded that "while it is clearly preferable that plaintiffs explicitly state whether a defendant is sued in his or her 'individual capacity,' failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice." *Id.* (internal citation omitted). The Sixth Circuit more recently reaffirmed this approach to determining whether a plaintiff's claims are asserted against a defendant in her official or personal capacity. *See Beil v. Lake Erie Correction Records Department*, 282 Fed. Appx. 363, 367 (6th Cir., June 13, 2008).

While no bright line rule exists to resolve this particular issue, the Sixth Circuit has nevertheless provided some guidance. For example, where a plaintiff, one month after the filing of a complaint, filed a motion "stating that the defendants acted outside the scope of their employment and in bad faith," such was sufficient to put the defendant on notice that he was being sued in his personal capacity. *Moore*, 272 F.3d at 772 (citation omitted). Other post-complaint pleadings, including the plaintiff's response to a motion for summary judgment, may also be relevant to determining whether the defendant has been provided sufficient notice that she is being sued in her personal capacity. *See Moore*, 272 F.3d at 772 (citation omitted). However, if the only indication that the defendant might be subjected to personal liability is that the plaintiff requested monetary damages, such is insufficient to put the defendant on notice that she is being sued in her personal capacity. *See Beil*, 282 Fed. Appx. at 367.

In this case, Plaintiff has failed to indicate in his complaint whether he is suing Defendant Ward in her official or personal capacity. Moreover, the Court discerns nothing in the language of Plaintiff's complaint (or any other pleading) that can fairly be said to put Defendant on notice that she is being sued in her personal capacity. The only indication that Plaintiff may be seeking to impose personal liability on Defendant is his request for monetary damages. Such a request, by itself, is insufficient. The Court concludes, therefore, that Plaintiff has sued Defendant Ward in her official capacity only. Accordingly, it is not necessary to resolve Defendant's request for qualified immunity. In the event, however, that Plaintiff's pleadings are interpreted as asserting claims against Defendant Ward in her personal capacity, the Court, as detailed below, concludes that Defendant is entitled to qualified immunity as to such claims.

The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of harassing litigation. *See Davis v. Scherer*, 468 U.S. 183, 195

(1984). As is well recognized, they can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages, and if unjustified lawsuits are quickly terminated. *Id.* Generally, when government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996). The question of whether a defendant enjoys qualified immunity is a question of law for the Court to resolve. *See Virgili v. Gilbert*, 272 F.3d 391, 392 (6th Cir. 2001); *Bell-Bey v. Williams*, 87 F.3d 832, 836 (6th Cir. 1996).

When evaluating claims of qualified immunity, the Court employs a two-step analysis. At step one, the Court determines whether the plaintiff's allegations, construed in the light most favorable to the plaintiff, establish a violation of his constitutional rights. *See Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If such fail to establish a violation of the plaintiff's constitutional rights, the defendant is entitled to immunity. *See Callahan*, 129 S.Ct. at 816. On the other hand, if the plaintiff's allegations demonstrate a violation of his constitutional rights, the Court must then determine whether the right in question was "clearly established" at the time the defendant acted. The defendant is entitled to qualified immunity unless his "conduct violated a clearly established constitutional right." *Id.*

Where neither the motion for qualified immunity nor the opposition thereto is supported by evidence, the first step of the qualified immunity analysis focuses on the allegations in the plaintiff's complaint and whether such state a claim for violation of the plaintiff's constitutional rights. If, on the other hand, the motion for qualified immunity and/or the opposition thereto are supported by evidence, such must be considered pursuant to the summary judgment standard articulated above. Thus, if the

evidence submitted by the parties demonstrates the existence of a genuine factual dispute, the resolution of which is essential to determining whether the defendant violated the plaintiff's constitutional rights, qualified immunity is not warranted. However, if the evidence establishes that the defendant did not violate the plaintiff's constitutional rights, qualified immunity is appropriate. *See, e.g., Scott v. Harris*, 550 U.S. 372, 377-86 (2007) (officer entitled to qualified immunity where evidence was such that "no reasonable jury" could have concluded that officer violated the plaintiff's constitutional rights).

Generally, to find a clearly established constitutional right, the district court "must find binding precedent by the Supreme Court, its Court of Appeals or itself." *Fisher v. Harden*, 398 F.3d 837, 845 (6th Cir. 2005) (quoting *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177-78 (6th Cir. 1988)). In extraordinary circumstances, however, the decisions of other courts may suffice if such decisions "both point unmistakably to the unconstitutionality of the conduct complained of and are so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Fisher*, 398 F.3d at 845-46 (quoting *Seiter*, 858 F.2d at 1177). A single idiosyncratic opinion from another circuit's court of appeals, however, is insufficient to put a defendant on notice of how the Sixth Circuit might decide the issue in question. *See Davis v. Holley*, 835 F.2d 1175, 1182 (6th Cir. 1987).

In determining whether Defendant is entitled to qualified immunity, the focus is on the objective legal reasonableness of her actions in light of clearly established law as it existed when she engaged in the challenged conduct. *See Anderson*, 483 U.S. at 640; *Harlow*, 457 U.S. at 818; *Fisher*, 398 F.3d at 845. Accordingly, the Court must determine "whether it would be clear to a reasonable officer that [her] conduct was unlawful in the situation [she] confronted." *Fisher*, 398 F.3d at 845 (quoting *Saucier*, 533 U.S. at 202).

Finally, while it "is often appropriate" to evaluate qualified immunity claims by analyzing the two steps (identified above) in sequence, such is no longer mandated. *See Callahan*, 129 S.Ct. at 818. As the *Callahan* Court recently stated, "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle*, 429 U.S. at 101-02. Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06.

The analysis by which an official's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. If the objective test is met, the Court must then determine whether the official possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff must establish that Defendant "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847). However, the Eighth Amendment is not a vehicle by which to constitutionalize state tort law. To the extent, therefore, that Plaintiff merely disagrees with Defendant's treatment decisions or claims that such constitute malpractice, Plaintiff fails to state a claim of constitutional magnitude. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995) (if prison officials responded reasonably to a substantial risk to an inmate's health or safety, they may avoid liability – even if the harm ultimately was not averted).

Defendant Ward has submitted evidence demonstrating that between January 15, 2008, and June 13, 2008, she examined Plaintiff on five separate occasions. (Dkt. #21, Exhibit 2; Dkt. #29). In his complaint, Plaintiff has not identified any specific instance in which Defendant Ward denied his requests for treatment. Instead, Plaintiff simply alleges that Ward failed to provide him with medical care. Defendant Ward has submitted evidence refuting this assertion. Plaintiff has submitted no evidence in response to Defendant Ward's submissions. As noted above, Plaintiff cannot defeat a properly supported motion for summary judgment by simply relying on the allegations in his unverified complaint. Accordingly, the Court finds that Defendant Ward is entitled to qualified immunity as to

Plaintiff's Eighth Amendment claims for monetary damages asserted against her in her personal capacity.

      C.      Eleventh Amendment Immunity

Plaintiff has sued Defendant Ward in her official capacity seeking monetary and injunctive relief. Defendant Ward asserts that she is entitled to immunity under the Eleventh Amendment as to those claims asserted against her in her official capacity.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. This provision has long been interpreted as precluding "federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Board of Regents*, 528 U.S. 62, 72-73 (2000). Accordingly, the Eleventh Amendment generally precludes federal court actions against a State unless that state has waived its sovereign immunity or consented to suit in federal court. *See Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)). The Court notes that the State of Michigan "has not consented to being sued in civil rights actions in the federal courts." *Johnson v. Unknown Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004). An action asserted against a State official in his official capacity is considered an action against the State. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

An exception to this general rule exists, however, for claims seeking prospective injunctive or declaratory (non-monetary) relief compelling a state official (in his official capacity) to

comply with federal law. *See Ex Parte Young*, 209 U.S. 123 (1908); *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507-08 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).

As previously noted, Plaintiff is seeking both monetary and injunctive relief. The Court finds that Defendant Ward is entitled to immunity under the Eleventh Amendment as to Plaintiff's claims for monetary damages against her in her official capacity. Defendant Ward is not, however, entitled to immunity as to Plaintiff's claims for prospective injunctive relief asserted against Defendant Ward in her official capacity.

D.  Claim for Injunctive Relief

As detailed above, Defendant Ward has submitted unrefuted evidence that she did not violate Plaintiff's Eighth Amendment rights. Accordingly, the Court recommends that Defendant Ward is entitled to summary judgment as to Plaintiff's claims for injunctive relief asserted against Ward in her official capacity.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendant Holmes' Motion for Summary Judgment, (dkt. #17), be **granted in part and denied in part**; Defendant Corning's Motion for Summary Judgment, (dkt. #18), be **granted in part and denied in part**; and Defendant Ward's Motion for Summary Judgment, (dkt. #20), be **granted**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                    Respectfully submitted,

Date: June 30, 2009                     /s/ Ellen S. Carmody
                                          ELLEN S. CARMODY
                                          United States Magistrate Judge